UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
LILLIAN OLIVERAS for            :  07 Civ. 2841 (RMB)(JCF)
ZANAIS GONZALEZ,                :
                                :        REPORT AND
            Plaintiff,          :  RECOMMENDATION
                                :
      - against -               :
                                :
MICHAEL J. ASTRUE,              :
Commissioner of Social Security,:
                                :
            Defendant.          :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE RICHARD M. BERMAN, U.S.D.J.:

        Lillian Oliveras, on behalf of Zanais Gonzalez, commenced this

action pursuant to 42 U.S.C. § 405(g) to review a final

determination of the Commissioner of Social Security ("the

Commissioner") finding Zanais not disabled and denying her

application for children's Supplemental Security Income ("SSI")

benefits.  The Commissioner has moved for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the reasons that follow, I recommend that the Commissioner's

decision be vacated and the case remanded for further

administrative proceedings consistent with this report.

Background

    A.  Prior Proceedings

        On March 28, 2005, Ms. Oliveras filed an application for SSI

on behalf of her daughter, Zanais Gonzalez, who has diabetes.  (R.

1

at 36).[1]  On July 28, 2005, the Social Security Administration (the "SSA") denied the plaintiff's application.  It relied on the fact that Zanais "had variable blood sugars, but no hospitalization since diagnosis" to conclude that her condition "does not cause marked and severe functional limitations."  (R. at 40).

Ms. Oliveras requested review of the SSA's initial eligibility determination by an administrative law judge ("ALJ") (R. at 41), and she and Zanais appeared pro se at a hearing held on October 16, 2006.  (R. at 197-212).  In an opinion dated October 27, 2006, the ALJ denied Zanais' claim.  (R. at 9-20).  When Ms. Oliveras' subsequent request for review by the Appeals Council of the SSA was denied (R. at 3-6), the ALJ's ruling became the Commissioner's final decision.  Ms. Oliveras filed the instant action on March 13, 2007.

B.  The Record

Zanais Gonzalez was born on June 11, 1998.  (R. at 36).  She was six years old when her mother first filed for SSI benefits on her behalf.  In the application, Ms. Oliveras reported that Zanais suffers from type 1 diabetes, which make her irritable and confused when her blood sugar gets low and aggressive when her blood sugar is high.  (R. at 50, 55, 74).  Ms. Oliveras also noted that Zanais'

---

[1]  "R." refers to the administrative record filed by the Commissioner.

condition sometimes affects her concentration and vision and that when her blood sugar gets out of control, her legs get heavy and wobbly, making it hard for her to walk.  (R. at 47, 75, 209).  Ms. Oliveras testified at the hearing that she walks her daughter to school every morning.  (R. at 206).  Zanais was first diagnosed with Type 1 (insulin-dependent, juvenile) diabetes mellitus when she was taken to Jacobi Medical Center for severe diabetic ketoacidosis[2] and a blood sugar level of 966 mg/dL[3] on July 8, 2004.  (R. at 55-56, 180).  Upon admission, Zanais was vomiting, "appear[ing] very weak," and complaining of dizziness and of seeing "blinking stars."  (R. at 182).  Zanais was held at the hospital for six nights and released on July 14, 2004.  (R. at 56).

Zanais' only other hospitalization occurred nearly two years later, on February 16, 2006.  A school nurse sent Zanais to the emergency room after an elevated glucose reading of 497 mg/dL.  (R. at 148, 192, 210).  On arrival at the hospital, Zanais' glucose level measured 30 mg/dL.  (R. at 192, 210).  The emergency room

---

[2] Ketoacidosis is "the accumulation of acid and hydrogen ions or depletion of alkaline reserve[s] in the body tissues and fluid, accompanied by a build up of ketone bodies.  "[U]ntreated, diabetic ketoacidosis progresses to nausea, vomiting, stupor, and [to a] potentially fatal hyperosmolar coma." Dorland's Illustrated Medical Dictionary ("Dorland's") 17, 489, 942 (29th ed. 2000).

[3] Glucose (or blood sugar) is measured in milligrams per deciliter.  The normal range is between 60 and 100 mg/dL.  (R. at 168, 170).

doctor diagnosed her as hyperglycemic and recommended that the school nurse not read her blood sugar so soon after snack time. (R. at 151, 192-93). Zanais was discharged later that same day. (R. at 151).

In a Teacher Questionnaire dated May 11, 2005, one of Zanais' teachers, Meena Patha,[4] stated that she had known Zanais for two months and observed no unusual degree of absenteeism, although Zanais left the classroom for about ten minutes once or twice daily to have her blood sugar checked. (R. at 61, 67). Ms. Patha also indicated that she did not observe any problems in each relevant functional category, or "domain,"[5] and that Zanais' "functioning appear[ed] age-appropriate." (R. at 62-67). The sole exception she noted was that Zanais had a slight problem "[m]aking and keeping friends," a factor related to the domain of interacting and relating with others. (R. at 64).

In an SSA Function Report completed by Ms. Oliveras on April 25, 2005, she reported that Zanais did not enjoy "being with other children [the same] age." (R. at 51). She explained that her

---

[4] The signature on the questionnaire is partially illegible; thus, the spelling of Ms. Patha's last name here is an approximation.

[5] To determine if a child's disability is functionally equivalent to a listed impairment, the Commissioner must assess the child's capacity in six domains, which are discussed in more detail below.

daughter seemed afraid and ashamed of her diabetes and just wanted to be "normal" like the others. (R. at 53, 210-11). At the hearing, Ms. Oliveras informed the ALJ that she was trying to place Zanais in therapy and in a diabetes camp to help her accept her illness. (R. at 210-11).

At the time of the hearing, Zanais was in the second grade. (R. at 201). She testified that she liked her teacher, Kara Monica. (R. at 201). Zanais also testified that she liked to read, write, play video games, and watch television. (R. at 201-03). At the ALJ's request, Zanais was able to name three friends she had at school. (R. at 202). Ms. Oliveras confirmed that Zanais was doing much better in school than the previous year and had a teacher who knew how to work around Zanais' condition. (R. at 206).

Dr. Miriam Silfen,[6] a pediatric endocrinologist who has treated Zanais since her diagnosis, submitted a medical report dated June 17, 2005. (R. at 132-37). In it, Dr. Silfen described Zanais' current hypoglycemia symptoms as, "tired, confused, sweaty, irritability," and her hyperglycemia symptoms as, "polydipsia,[7]

---

[6] Dr. Silfen is misidentified as "Dr. Silfer" in the hearing transcript. (R. at 208).

[7] Polydipsia is "chronic excessive thirst and intake of fluid." Dorland's 1430.

polyuria,[8] [and] fatigue." (R. at 132). According to Dr. Silfen, Zanais' last physical exam was normal with "very variable blood sugars." (R. at 135, 136). She indicated that Zanais' diabetes is chronic and lifelong. (R. at 133).

On the second page of the report, Dr. Silfen was asked to indicate if the child's function/behavior is age appropriate. If no, then please note at which age level the child functions and describe the basis for your observations."[9] (R. at 133). Rather than comment, Dr. Silfen responded, "N/A. (I am a pediatric endocrinologist)." (R. at 133). Dr. Silfen reported that Zanais displayed no indication of a psychiatric disorder and that her diabetes did not affect other organ systems. (R. 133, 136). On October 5, 2006, Dr. Silfen reported that Zanais' last Hgb A1c in February 2006 was 9.6%.[10] (R. at 180). Zanais visits Dr. Silfen

---

[8] Polyuria is "the passage of a large volume of liquid in a given period." Dorland's 1436.

[9] The following skill areas were listed, and left blank, on the form: fine/gross motor skills, sensory abilities, communication skills, cognitive skills, and social/emotional skills. (R. at 133-34). These areas overlap with three of the six domains relevant to determining childhood disability: acquiring and using information, interacting and relating with others, and moving about and manipulating objects.

[10] Hgb is shorthand for hemoglobin. An Hgb A1c test estimates a person's average blood sugar level. See Diabetes Exams and Tests, http://diabetes.webmd.com/tc/type-1-diabetes-recently-diagnosed-exams-and-tests (last visited May 14, 2008). The normal range is 3.9 - 6.9%. (R. at 169, 173-75, 178).

at Jacobi Hospital every six to eight weeks.  (R. at 208).

Dr. Radharani Mohanty, an SSA medical consultant, completed a Childhood Disability Evaluation of Zanais on June 27, 2005.  (R. at 138-44).  He opined that she had a less than marked limitation in the domain of health and physical well-being.  (R. at 141). Without elaboration, he determined she had no limitation in the other five domains.  (R. at 140-41).  Dr. Mohanty appears to have based his review on the record without examining Zanais in person. (Defendant's Memorandum of Law in Support of His Motion for Judgment on the Pleadings ("Answer") at 5).

Other medical information in the file includes records from Hunts Point Multi-Service Center dated May 10, 2002 through June 7, 2005 (R. at 86-120) and records from Jacobi Medical Center dated July 8, 2004 through October 12, 2006.  (R. at 121-31, 145-91). Many of the treatment notes are for conditions such as a fever and sore throat (R. at 87) or scalp infection (R. at 84, 89).  On June 29, 2006, Zanais was treated for a yeast infection related to her diabetes.  (R. at 187, 208).

Zanais' condition is treated with insulin and by closely monitoring her diet.  (R. at 69, 133, 180).  She testified that she knows how to take her own blood sugar readings and give herself her own shots when necessary.  (R. at 203).

C.    <u>Determining Childhood Disability</u>

To qualify for disability benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The ALJ engages in a multi-step analysis to decide whether a child is disabled under this standard.

First, the ALJ determines if the child is engaged in "substantial gainful activity," which precludes a finding of disability.  42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(a). If the child is not involved in such activity, the ALJ next evaluates whether she has a medically determinable impairment or combination of impairments that is considered "severe." 20 C.F.R. § 416.924(a).  If the impairment is not "medically determinable" or amounts only to "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," the child will be found not to be disabled. 20 C.F.R. § 416.924(c). Next, if the child has a severe impairment, but that impairment does not "meet, medically equal, or functionally equal" one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the child will be deemed not to be

disabled.  20 C.F.R. § 416.924(d); <u>see also</u> 20 C.F.R. § 416.925(a); 20 C.F.R. § 416.926(a).  If the child meets the three criteria outlined above, she is eligible for SSI benefits.

To "meet" a listed impairment as described above, the child must both be diagnosed with the impairment and "satisf[y] all of the criteria of the listing."  20 C.F.R. § 416.925(d).  To "medically equal" a listed impairment, the claimed impairment must be "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 416.926(a), (b).  In making this determination, the ALJ must "consider all evidence in [a claimant's] case record about [the claimed] impairment(s) and its effects on [the claimant] that is relevant."  20 C.F.R. § 416.926(c).

To "functionally equal" a listed impairment, the impairment "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."  20 C.F.R. § 416.926a(a).  The six domains are: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  When assessing limitations in the six domains, the ALJ must compare the child to other children of her age who do not have an impairment.  20 C.F.R. §§ 416.924b, 416.926a(b).  The ALJ must

"assess the functional limitations caused by [the] impairment(s) . . . [and then] the interactive and cumulative effects of all of the impairments for which [there is] evidence, including any impairments . . . that are not severe."  20 C.F.R. § 416.926a(a) (internal quotation marks omitted).  The ALJ will also consider (1) the child's ability to initiate and sustain activities, how much extra help she needs, and the effects of structured or supportive settings; (2) how well the child functions in school; and (3) the effects of medications or other treatment.    20 C.F.R. § 416.924a(a)(1)-(3).

    D.   The ALJ's Decision

    Applying the multi-step analysis described above, the ALJ found that Zanais was not engaged in substantial gainful activity and that she had a severe impairment, but one which did not meet or medically equal one of the impairments listed in Appendix 1.[11]  (R. at 15).  The ALJ further found that the plaintiff did not have an impairment or combination of impairments that functionally equaled

---

    [11] In particular, the ALJ looked at listing 109.08, which requires the claimant have juvenile diabetes mellitus plus one of the following: "A.  Recent, recurrent hospitalizations with acidosis; or B. Recent, recurrent episodes of hypoglycemia; or C. Growth retardation . . .; or D. Impaired renal function.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 109.08.  The ALJ found that the plaintiff did not have recurrent hospitalizations or any of the conditions required under § 109.08 (B)-(D).  (R. at 15).

a listed impairment.  (R. at 15).  First, the ALJ opined that "the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms [were] not entirely credible."

(R. at 15).  Next, assessing the six functional domains, the ALJ found the plaintiff had a marked limitation in the domain of physical well-being and a less than marked limitation in moving about and manipulating objects, but found no limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for oneself.  (R. at 16-20).  Thus, the ALJ concluded that the plaintiff was not disabled according to the Social Security Act, (the "Act").  (R. at 20).

<u>Discussion</u>

    A.   <u>Standard of Review</u>

The scope of review of a social security disability determination involves two levels of inquiry.  First, the court must determine whether the Commissioner evaluated the claim based on the correct legal standard.  <u>Pollard v. Halter</u>, 377 F.3d 183, 188-89 (2d Cir. 2004) ("Failure to apply the correct standards is grounds for reversal." (quoting <u>Townley v. Heckler</u>, 748 F.2d 109, 112 (2d Cir. 1984)).  "[W]here there is a reasonable basis for

doubt whether the ALJ applied correct legal principles," the ALJ cannot proceed with the review because it "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." Rosado v. Barnhart, 290 F. Supp. 2d 431, 436 (S.D.N.Y. 2003) (quoting Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). An administrative decision cannot be upheld solely on the basis that the records contains a plausible foundation for it. Thomas v. Barnhart, No. 01 Civ. 518, 2002 WL 31433606, at *4 (S.D.N.Y. Oct. 30, 2002).

Second, the court must ascertain whether the Commissioner's decision "is supported by substantial evidence." Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004); see 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (quoting Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000)). "[T]o determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation omitted). The substantial evidence

standard also applies to the inferences and conclusions that the Commissioner draws from the facts. <u>Toribio v. Barnhart</u>, No. 02 Civ. 4929, 2003 WL 21415329, at *2 (S.D.N.Y. June 18, 2003).

A district court may elect to affirm, reverse, or modify the Commissioner's final decision. 42 U.S.C. § 405(g); <u>Butts</u>, 388 F.3d at 385. Remand is warranted where the ALJ has based a final determination on an improper legal standard or if further development of the record is necessary to fill in evidentiary gaps. <u>Parker v. Harris</u>, 626 F.2d 225, 235 (2d Cir. 1980). Remand is also appropriate if the ALJ's rationale could be rendered more intelligible through further findings or a more complete explanation. <u>Pratts v. Chater</u>, 94 F.3d 34, 39 (2d Cir. 1996). In conducting this review, a court must keep in mind that "[t]he Act must be liberally applied, for it is a remedial statute intended to include not exclude." <u>Cruz v. Sullivan</u>, 912 F.2d 8, 11 (2d Cir. 1990).

B.   <u>Duty to Develop the Record</u>

1.   <u>Applicable Law</u>

In each case, the ALJ has an affirmative duty to develop a "complete and comprehensive medical record". <u>Rosado</u>, 290 F. Supp. 2d at 438, 441. While the burden of establishing her disability ultimately lies with the claimant, the Commissioner is obligated to help the claimant develop her case by obtaining relevant records

and through questioning to explore the facts. See 42 U.S.C. § 423(d)(5)(B) (setting forth duty to obtain medical history and records); 20 C.F.R. § 404.1512(d)-(f) (describing affirmative obligation of ALJ to obtain records from claimant's medical sources and, if necessary, request a consultative examination); Dimitriadis v. Barnhart, No. 02 Civ. 9203, 2004 WL 540493, at *9 (S.D.N.Y. March 17, 2004); Jones v. Apfel, 66 F. Supp. 2d 518, 538 (S.D.N.Y. 1999). This obligation arises from the non-adversarial nature of the proceedings. Butts, 388 F.3d at 386. The ALJ's duty is heightened where, as here, the claimant is not represented by counsel. See Echevarria v. Secretary of Health and Human Services, 685 F.2d 751, 755 (2d Cir. 1982)(describing ALJ's duty to pro se claimant "to scrupulously and conscientiously probe into, inquire of, and explore [] all the relevant facts" (quoting Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980)); Valoy v. Barnhart, No. 02 Civ. 8955, 2004 WL 439424, at *7 (S.D.N.Y. March 9, 2004); Jones, 66 F. Supp. 2d at 538.

The ALJ's responsibility to help a claimant obtain complete medical records dovetails with the treating physician rule, which requires controlling weight be given the opinion of a claimant's treating physician when it is supported by accepted diagnostic techniques and not inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2); Rosado, 290 F. Supp. 2d at 438. The

combination of these two principles, "compels the ALJ . . . to obtain from the treating source expert opinions as to the nature and severity of the claimed disability . . . . Until he satisfies this threshold requirement, the ALJ cannot even begin to discharge his duties . . . under the treating physician rule." <u>Pabon v. Barnhart</u>, 273 F. Supp. 2d 506, 514 (S.D.N.Y. 2003) (alteration in original) (quoting <u>Peed v. Sullivan</u>, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991)).  It is not enough for the ALJ to simply obtain the treating physicians records.  Rather,

> the ALJ must obtain the treating physician's opinion regarding the claimant's alleged disability; "raw data" or even complete medical records are insufficient by themselves to fulfill the ALJ's duty . . . .  It is the <u>opinion</u> of the treating physician that is to be sought; it is his <u>opinion</u> as to the existence and severity of a disability that is to be given deference.

<u>Dimitriadis</u>, 2004 WL 540493, at *9 (internal citations omitted); <u>see also</u> <u>Jiminez v. Massanari</u>, No. 00 Civ. 8957, 2001 WL 935521, at *11 (S.D.N.Y. Aug. 16, 2001) (remanding for failure to develop the record when none of the treating physicians gave opinions as to claimant's functional limitations).  Indeed, a "consultative physician['s] deductions may not replace the true opinions of the treating physicians." <u>Valoy</u>, 2004 WL 439424, at *7.

The SSA is required to make "every reasonable effort" to obtain a claimant's treating physician's medical reports.  20 C.F.R. §§ 404.1512(d), 416.912(d); <u>accord</u> <u>Jones</u>, 66 F. Supp. 2d at

539.  This means that the ALJ should make an initial request from the claimant's treating physician for records, plus one follow-up request, 20 C.F.R. §§ 1512(d)(1), 416.912(d)(1), and if the documents received lack any necessary information, the ALJ should recontact the treating physician.  20 C.F.R. §§ 404.1512(e), 416.912(e); Jiminez, 2001 WL 935521, at *11; Jones, 66 F. Supp. 2d at 540-41.  The ALJ also has authority to subpoena medical evidence on behalf of the claimant.  42 U.S.C. § 405(d).

At times it may be most reasonable for the ALJ to explain to the claimant that she should obtain a more detailed statement from the treating physician.  Hankerson, 636 F.2d at 896.  It might also be reasonable for the ALJ to reveal that he or she plans to rule against the claimant unless more evidence is presented.  Jones, 66 F. Supp. 2d at 539 (remanding case where "the ALJ did not explain why the records were necessary or that he was planning to rule against [the claimant] and that she needed to produce evidence from her treating physicians to convince him otherwise.").

2.    The ALJ's Development of the Record

In this case, the record lacks a treating physician's opinion regarding Zanais' functional capacity in the six domains and the age appropriateness of her behavior.  Consequently, the ALJ was left with only the medical data and the consulting physician's Childhood Disability Evaluation Form to render his assessment of

16

Zanais' functional limitations.  Relying on this incomplete record, the ALJ found that Zanais' had no functional limitations in four of the six domains.  For the domains of interacting and relating with others and caring for oneself, the ALJ cited to no medical evidence whatsoever,[12] and for the domains of acquiring and using information and attending and completing tasks, he cited exclusively to the report of a consulting physician who never examined Zanais in person.

The opinion of a consulting doctor who simply reviewed the medical data is not an adequate substitute for the opinion of a physician who has been able to observe the claimant over a period of time.  There are a number of steps that the ALJ should have taken to attempt to secure an opinion from one of Zanais' treating physicians.

First, the ALJ might have followed up with Dr. Silfen to solicit her opinion.  As discussed above, Dr. Silfen initially declined to provide an opinion, stating, "N/A. (I am a pediatric endocrinologist )."  (R. at 133)  Dr. Silfen's response suggests

---

[12] For the domain of interacting and relating with others, the ALJ inaccurately stated that "[n]o problems were alleged."  (R. at 18).  In the Function Report dated April 25, 2005, Ms. Oliveras indicated that Zanais' condition affected her behavior with other people and that she did not enjoy being around her peers.  (R. at 51).  Also, in the Teacher Questionnaire dated May 11, 2005, Ms. Patha reported that Zanais had some difficulty "[m]aking and keeping friends."  (R. at 64).

that she believed herself unqualified to assess Zanais' functional capacity because of her narrow field of expertise. Nevertheless, the ALJ could have attempted to confirm that this was the case. The ALJ might also have explained to Ms. Oliveras that he was going to rule against her and that she should try to get a medical opinion from Dr. Silfen to change that outcome.

Next, the ALJ might have sent an assessment form to Zanais' regular pediatrician, Dr. Janet Hobson, whose name appeared multiple times in the record. (R. at 84-85, 191). Indeed, when asked about her daughter's treatment at the hearing before the ALJ, Ms. Oliveras noted that Zanais, "sees her pediatric endocrinologist about . . . every six to eight weeks. And she also has her regular pediatrician, which is Janet Hobson." (R. at 208). Dr. Hobson might have been better situated than a specialist like Dr. Silfen to compare Zanais' functional capacity and behavior to those of other children. However, while clearly aware that he might have obtained a treating source opinion from her, the ALJ never requested an opinion from Dr. Hobson, nor did he direct Ms. Oliveras to request any further information.

It may well be that a treating physician would opine that the functional domains for which the ALJ found there to be little or no limitation are not likely to be affected by the type of diabetes that Zanais has. However, there is currently no medical opinion on

18

the record that states this, and it is not for an ALJ or this Court

to render one.   Remand is appropriate here, even if there is no

guarantee that the outcome will change, so that the ALJ can make

all reasonable efforts to obtain a treating physician's opinion on

Zanais' behavior and functional capacity.

   D.   The Credibility Ruling[13]

   Remand is also warranted so that the ALJ can substantiate his

---

[13] Zanais' mother raised several other issues in a letter
responding to the Answer, including a fear that the ALJ assigned
too much weight to the teacher questionnaire and assumed too much
from Zanais' happy disposition on the day of the hearing.
Specifically, Ms. Oliveras complains that the ALJ relied upon the
opinion of a teacher who only observed Zanais for one month.
(Plaintiff's Response to the Commissioner's Motion For Judgment
dated March 2, 2008 ("Pl. Resp.") at 2).   The regulations instruct
ALJs to consider all relevant evidence in determining a child's
functioning, including information from the child's teachers; 20
C.F.R. § 416.924a(a) though  the weight to be assigned to that
information should depend upon the extent of the teacher's contact
with the child.   Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d
208, 218 (S.D.N.Y. 1999).   In this case, the ALJ did not cite to
the Teacher's Questionnaire in his opinion.   Presumably, he did not
afford it much weight.

Ms. Oliveras also suggests that the ALJ was mistaken in his
assessment Zanais' emotionally well-being.   (Pl. Response at 2).
The ALJ has an affirmative duty to develop the record, but the
burden is ultimately on the plaintiff to prove she has a
disability.  20 C.F.R. § 404.1512(a); see also Yancey v. Apfel, 145
F.3d 106, 114 (2d Cir. 1998).   "A physical or mental impairment
must be established by medical evidence consisting of signs,
symptoms, and laboratory findings, not only by [the claimant's own]
statement of symptoms."   20 C.F.R. § 404.1508 (emphasis added).
Ms. Oliveras did not present any medical evidence that Zanais had
an emotional or psychological impairment, the ALJ did not err by
declining to investigate further.

conclusion that the testimony of Ms. Oliveras and Zanais regarding Zanais' symptoms was "not entirely credible." (R. at 15). An ALJ's finding that a witness lacks credibility must be "set forth with sufficient specificity to permit intelligible plenary review of the record." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 261 (2d Cir. 1988). Accordingly, the ALJ should "make[] clear, both to the individual and to any subsequent reviewers, the weight [he] gave to the individual's statements and the reasons for that weight." <u>Snyder v. Barnhart</u>, 323 F. Supp. 2d 542, 546 (S.D.N.Y. 2004).

In this case, the sole sentence addressing credibility in a ten-page opinion is buried in the ALJ's recitation of the pertinent law. The ALJ failed to present any reasoning to justify his disbelief, nor did he identify any discrepancy between the statements and record before him. Furthermore, the ALJ states that the claims are "not entirely" credible, leaving the reader to speculate as to which statements the ALJ accepted and which he rejected. On remand, the ALJ should set forth with greater specificity which aspects of Ms. Oliveras and Zanais' testimony he found not credible and the reasons underlying that finding.

F. <u>Substantial Evidence</u>

As discussed above, the ALJ failed to adequately develop the record regarding Zanais' functional capacity. Where the ALJ has

failed to develop the record, a reviewing court "need not -- indeed, cannot -- reach the question of whether the Commissioner's denial of benefits was based on substantial evidence." Jones, 66 F. Supp. 2d at 542; see Valoy, 2004 WL 439424, at *9. Thus, any review of whether the decision was based on substantial evidence must be deferred until the record is complete.

Conclusion

For the reasons set forth above, I recommend that the Commissioner's decision denying Ms. Oliveras' application on behalf of her daughter for SSI benefits be vacated and remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard M. Berman, U.S.D.J., Room 650, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

21

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           May 30, 2008

Copies mailed this date to:

Lillian Oliveras
1160 Evergreen Avenue, #4E
Bronx, New York   10472

Susan D. Baird, Esq.
Assistant United States Attorney
86 Chambers Street
New York, New York   10007